**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MFIB LLC, | No. CV-25-02517-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| IBCA LLC, et al., | |
| Defendants. | |

Before the Court is Plaintiff's Motion for Preliminary Injunction (Doc. 2). For the following reasons, the Court will deny the Motion for Preliminary Injunction.

**I.     BACKGROUND**

Plaintiff, MFIB, LLC, doing business as MFRG-ICON Construction and ICON National ("Plaintiff" or "MFIB"), seeks injunctive relief for a variety of claims relating to Defendants IBCA, LLC, doing business as ICON Builders ("ICBA" or "ICON Builders"), and Allen W. Sands' ("Sands," collectively "Defendants") alleged interference with Plaintiff's trademarked names, all involving the use of the term "ICON." (Docs. 2, 3.) Plaintiff is a construction company that specializes in affordable housing construction, owned by Justin Krueger, who is not a party to this case. (Doc. 1 at 3–5, ¶¶ 9–19.) Defendant IBCA is also an affordable housing construction company and is owned by Defendant Sands. (*Id.* at 2, ¶ 4.) This dispute stems from Defendants' use of the name ICON Builders. (*Id.* at 6–10, ¶¶ 25–29.)

Plaintiff MFIB was formed through the merging of Defendant Sands' and Mr.

Krueger's construction companies. (*Id.* at 4, ¶ 12.) Prior to the formation, Defendant Sands owned and operated a general contracting company, Icon Commercial Contractors, Inc. ("ICC"), doing business as ICON Builders. (*Id.* at 3, ¶ 10; Doc. 28 at 7.) Mr. Krueger worked for Defendant Sands at ICC for several years before departing to eventually form his own company, Multi-Family Renovation Group ("MFRG"). (Doc. 1 at 3–4, ¶¶ 9–12.) In 2017, ICC and MFRG joined to form MFIB, LLC. (Doc. 1 at 4, ¶¶ 12–13.) The parties executed a Transition Services Agreement, which granted MFIB a "perpetual" and "non-exclusive" license "to use ICON trademarks and trade names for purposes of carrying out the duties of MFIB on the completion of the ICON projects through this Agreement." (Doc. 20-1 at 5; Preliminary Injunction Hearing Exhibit[1] 101.) The newly formed company operated under the name MFRG-ICON Construction. (Doc. 1 at 4, ¶ 15.) In 2023, Plaintiff MFIB obtained two federal trademark registrations using the "MFRG-ICON Construction" name: U.S. Trademark Reg. No. 7,228,247 and 7,228,248. (*Id.* at 5, ¶ 19.)

In August 2022, MFRG purchased ICC's ownership interest in MFIB in accordance with the parties' Membership Interest Purchase Agreement ("the Purchase Agreement"). (Doc. 28 at 8; Doc. 20-1 at 49; Ex. 103.) During the buyout, Plaintiff MFIB started a related brand, ICON National, and filed for two more federal trademark registrations in that name under U.S. Trademark Reg. No. 7,228,222 and 7,230,751. (Doc. 2 at 5.) The Purchase Agreement specified that Plaintiff MFIB had the right to continue using the marks "MFRG-ICON," "ICON National," and "MFRG-ICON Construction." (Doc. 28 at 9; Doc. 20-1 at 49.) The Purchase Agreement also provided that MFIB would not use the marks "ICON Commercial" or "ICON Commercial Contractors" going forward. (*Id.*) MFIB refers to the "MFRG-ICON," "ICON National," and "MFRG-ICON Construction" trademarks as the ICON-formative marks,[2] alleging that MFIB has invested in these marks to garner consumer recognition and commercial goodwill. (Doc. 2 at 5.)

---

[1] Hereinafter, "Ex."

[2] Plaintiff also asserts ownership rights to "ICON" alone (Hearing Tr. 17:15) and asks the Court to enjoin Defendants from using "ICON" altogether. (Doc. 2-1 at 2.)

The present dispute originated when Defendant Sands formed a new company in 2023,[3] IBCA, LLC ("IBCA" or "ICON Builders"), doing business as ICON Builders. (*Id.* at 6.) Plaintiff alleges that, since 2024, Defendants' use of "ICON" and "ICON Builders" has increasingly caused consumer confusion within the affordable housing and construction industries. (Doc. 2 at 6–7.) Plaintiff attached eleven exhibits to its Declaration, showing examples of consumer confusion that took place from March 2025 through July 2025.[4] (Doc. 3-2 at 1–41.)

On July 17, 2025, Plaintiff filed the Complaint (Doc. 1) and the Motion for Preliminary Injunction (Doc. 2). Plaintiff brings claims against Defendants for federal trademark infringement, federal false designation of origin, and trademark infringement under Arizona state law. (Doc. 1 at 11, ¶¶ 36–67.) In its Motion for Preliminary Injunction, Plaintiff asks the Court to enjoin Defendants from (1) using the "ICON" or "ICON Builders" marks and from using any of the ICON-formative marks or other marks that would cause confusion, as well as from filing an application for registration of any of the ICON-formative marks. (Doc. 2-1 at 1–2.) Plaintiff also asks that the Court enjoin Defendant from using any of the ICON-formative marks in an internet domain name. (Doc. 2-1 at 1–2.)

The Court held an evidentiary hearing on September 10, 2025, during which it heard testimony from Mr. Krueger and Defendant Sands, among others, and received dozens of exhibits into evidence. (ME 40). Based on the briefing, the parties' arguments, and the

---

[3] The parties disagree on exactly when Defendant Sands publicly launched this new company. Defendants allege that Defendant Sands began conducting business as ICON Builders by June 2023, less than one year after the buyout, and was awarded a large contract in January 2024. (Doc. 28 at 10.) Plaintiff alleges that Defendants only began to use ICON Builders as a consumer-facing business name in mid-2024, pointing to ICON Builders' first social media post on Instagram, dated May 9, 2024. (Doc. 3 at 5–6.) Exactly when ICON Builders launched is not relevant to this analysis.

[4] Plaintiff's exhibits show that "industry executives at conferences have entered meetings with IBCA, mistakenly thinking they were with MFIB" and that one "industry executive mistook his organization's ongoing project work with IBCA by thinking it was MFIB who performed those services." (Doc. 2 at 7.) MFIB has also received communications from executives, recruiters, lenders, and subcontractors that were meant for IBCA. (*Id.*) Large payments intended to be sent to IBCA have also been sent to MFIB. (*Id.*) For more in-depth descriptions of each of Plaintiff's exhibits, *see* Doc. 3 at 7–9.

evidence in the record, the Court now addresses the Motion for Preliminary Injunction.

**II.     LEGAL STANDARD**

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (citation omitted). A party seeking injunctive relief under Rule 65 of the FRCP must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit observes a "sliding scale" approach that balances these elements "so that a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, an injunction can issue where there are "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. Still, "[l]ikelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors in the absence of serious questions going to the merits." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal citations and quotation marks omitted).

**III.    DISCUSSION**

    **a. Likelihood of Success on the Merits**

To meet this factor, Plaintiff need only show a likelihood of success on the merits—or serious questions—as to one of their claims for relief. Plaintiff's Motion for Preliminary Injunction focused solely on one claim for relief: federal trademark infringement under 15 U.S.C. § 1114.[5] (*See* Doc. 2.) "To prevail on its claim of trademark infringement, [Plaintiff] must prove: (1) that it has a protectible ownership interest in the mark; and (2) that

---

[5] Plaintiff points out that its claim for false designation of origin under 15 U.S.C. § 1125(a) requires proof of the same two elements. (Doc. 2 at 8.)

[Defendants'] use of the mark is likely to cause consumer confusion, thereby infringing upon [Plaintiff's] rights to the mark." *Dep't of Parks & Recreation for State of Cal. v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006).

Plaintiff argues that, although Defendant Sands previously used the ICON Builders mark, he abandoned his rights to the mark during the time his company, ICC, was a part-owner of MFIB. (Doc. 2 at 13–15.) Therefore, Plaintiff asserts that MFIB has a protectable ownership interest in the marks. Plaintiff also argues that the mark is likely to cause consumer confusion and provided of alleged actual confusion among business partners and industry actors. (Doc. 2 at 8–13; Doc. 3-2 at 1–41; Hearing Tr. at 39:8–50:13.) On the other hand, Defendants argue that Defendant Sands did not abandon use of the trademark, and that Plaintiff, as a junior user of the marks, cannot enjoin Defendants from use. (Doc. 28 at 12–17.) The Court will first address the ownership of the marks.

Although registration of a mark is prima facie evidence of ownership, the true test of ownership is priority of use in commerce, *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996), which is assessed considering the totality of the circumstances, *Rearden LLC v. Rearden Com.*, 683 F.3d 1190, 1205 (9th Cir. 2012). Thus, a defendant in a trademark infringement action "can rebut [the presumption of the plaintiff's ownership] by showing that it used the mark in commerce first . . . ." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) *abrogated on other grounds by Herb Reed Enters., LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239 (9th Cir. 2013); *see, e.g.*, *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1081 (11th Cir. 2016) (stating that, "in the absence of actual sales, advertising, publicity, and solicitation" may be sufficient to establish prior use of a mark).

Trademark rights may arise without federal registration through "prior exclusive appropriation or adoption and use." *Pac. Supply Co-op. v. Farmers Union Cent. Exch. Inc.*, 318 F.2d 894, 905 (9th Cir. 1963). For both goods and services, the "'use in commerce' requirement includes: (1) an element of actual use, and (2) an element of display." *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 817 (9th Cir. 2021) (citation omitted). A party can

show that the owner of a mark abandoned their trademark rights by showing "(1) discontinuance of trademark use *and* (2) intent not to resume such use . . . ." *Electro Source, LLC v. Brandess-Kalt-Aetna Grp.*, 458 F.3d 931, 935 (9th Cir. 2006).

### i. Prior Use

Plaintiff does not dispute that Defendant Sands began doing business in the affordable housing construction industry under the name ICON Builders in 1985. (Doc. 30 at 2–3.) At the same time, however, Plaintiff suggests that Defendant Sands himself does not have rights to the marks because it was his businesses that used the mark in commerce, not Defendant Sands himself. (Doc. 30 at 2–3.) At the preliminary injunction hearing, Defendants argued that this distinction is immaterial, citing the defense to trademark infringement explained in 15 U.S.C. § 1115(b)(5). That section provides that a party can rebut the presumption of ownership afforded to the owner of a federally registered mark by showing "[t]hat the mark . . . was adopted without knowledge of the registrant's prior use and has been continuously used by such *party or those in privity with him* from a date prior to . . . the registration of the mark[.]" 15 U.S.C. § 1115(b)(5) (emphasis added); *see also Park 'n Fly, Inc. v. Dollar Park and Fly, Inc.*, 782 F.2d 1508, 1509 (9th Cir. 1986) ("The prior innocent use exception applies when the mark has been used by a party or those in privity with it since a date prior to registration of the mark."). Courts have recognized that in this context, "privity may even be established through an implied-in-fact contract." *Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01Civ.2950(DAB)(DCF), 2005 WL 2148925, *10 (S.D. N.Y. 2005).

The evidence shows that Defendant Sands "originated the ICON mark." (Doc. 28 at 2.) Defendant Sands' companies have continuously used the ICON Builders marks, and Defendant Sands was the full owner and manager of those companies. (Hearing Tr. at 21:18–22:3.) Defendant Sands testified at the preliminary injunction hearing that all his companies used the ICON Builders name, and he provided a timeline to show continuous use. (*Id.* at 103:17–110:12.) As Plaintiff argues, there are no written licensing agreements between Defendant Sands and his companies (Doc. 30 at 3.) But were those agreements to

exist, Defendant Sands would have executed the agreement on behalf of both parties. (Hearing Tr. at 23:2.) Even though there are no written licensing agreements between Defendant Sands and his companies, the Court finds that Defendant Sands is in privity with his companies and can therefore assert priority based on the companies' prior use of the mark. *See Diarama*, 2025 WL 2148925, at *10; *Privity*, *Black's Law Dictionary* (12th ed. 2024) ("The connection or relationship between two parties, each having a legally recognized interest in the same subject matter (such as transaction, proceeding, or piece of property); mutuality of interest."). Therefore, Defendant Sands is considered the senior user of the ICON mark.

  ii. *Abandonment*

  Plaintiff offers two theories of abandonment, arguing that even if Defendant Sands owned the ICON mark, he gave up his rights to the mark when MFIB was formed. Plaintiff first argues that Defendant Sands abandoned the ICON mark through nonuse, after the formation of MFIB and the completion of ICC projects. (Doc. 2 at 13–15.) Second, Plaintiff argues that Defendant Sands abandoned the mark through an uncontrolled, or "naked," licensing agreement. (Doc. 30 at 11–13.) The Court will address each argument in turn.

  First, Plaintiff asserts that from 2018 to 2023, Sands "shut down all operations of ICC," failing to maintain their business registration and website. (Doc. 2 at 14; *see also* Doc. 30 at 9–11.) Further, at the preliminary injunction hearing, Plaintiff asserted that Defendant Sands abandoned the mark because during that time, ICC had ceased projects in the affordable housing renovation industry, focusing instead on new affordable housing construction. (Hearing Tr. at 32:6–23.) Indeed, Mr. Kreuger testified at the hearing that between March 2020 and August 2023, ICON Builders only completed new construction/joint venture projects. (*Id.*) But Plaintiff has not provided the Court with any support for the contention that Defendants abandoned the mark because they did not specifically use the mark to perform affordable housing renovations. *See Electro Source, LLC*, 458 F.3d at 936 ("[15 U.S.C. § 1127] thus provides that 'use' of a trademark defeats an allegation of abandonment when: the use . . . is bona fide; is made in the ordinary course

of trade; and is not made merely to reserve a right in a mark.").

Defendants argue that when MFIB was formed, Defendant Sands merely licensed the ICON mark to MFIB for limited use; he did not sell the rights to the ICON trade names. (Doc. 28 at 7.) Section 3.01 of the Transition Services Agreement states, in part:

> ICON hereby grants MFIB a perpetual, non-exclusive, non-transferable, royalty-free, fully paid-up, worldwide license to use ICON trademarks and trade names for purposes of carrying out the duties of MFIB on the completion of the ICON projects through this Agreement. The parties expressly acknowledge and agree that ICON shall continue to use its trademarks and trade names in its other lines of business and shall retain all right, title and interest in and to such trademarks and trade names, except for the license granted herein.

(*Id.* at 7; Doc. 20-1 at 5; Ex. 101.) Moreover, the Purchase Agreement provides that MFIB would not use the names ICON Commercial or ICON Commercial Contractors going forward. (Doc. 28 at 9; Doc. 20-1 at 49; Ex. 103.) These agreements show that Defendant Sands owned and retained at least some rights to the ICON marks. In addition, ICON Builders maintained its business registrations, bank accounts, insurance, employee payroll, digital presence, and mailing address. (Doc. 28 at 9; *see also* Ex. 108.) Also, from 2017 to 2023, ICON Builders participated in joint ventures with other companies, acted as a guarantor and developer in several projects in Texas and California, and completed an apartment complex project in New Mexico. (Doc. 28 at 10; Doc. 30-2 at 2–9; Ex. 18.) At the hearing, Defendants presented evidence of teaming agreements, guarantor agreements, and consulting agreements that ICON Builders executed from 2018 through 2023. (Exs. 111–115, 117–119; Docs. 21 at 40–61, 22 at 10–57.)

The Ninth Circuit has clarified that "[e]ven a single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith." *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 804 (9th Cir. 1970). It does not appear that Defendant Sands discontinued use of the trademark ICON Builders from 2018 through 2023, or at any other time. The evidence contradicts Plaintiff's allegations, and thus, Plaintiff is unlikely to show abandonment through discontinuance of use. Further "unless the trademark use is actually terminated, the intent not to resume use prong of

8

abandonment does not come into play." *Electro Source, LLC*, 458 F.3d at 937–38. Because ICON Builders used the mark in commerce, there was no abandonment, and the Court need not assess whether there was intent not to resume use.[6]

Next, Plaintiff argues that Defendant Sands abandoned the mark when ICC licensed the use of the mark to ICON because that licensing agreement was uncontrolled. (Doc. 30 at 11–14.) "[A] trademark owner may grant a license and remain protected provided quality control . . . is maintained." *Barcamerica Int'l USA Tr. v. Tyfield Imps., Inc.*, 289 F.3d 589, 595 (9th Cir. 2002) (citation omitted). "Consequently, where the licensor fails to exercise adequate quality control over the licensee, 'a court may find that the trademark owner has abandoned the trademark, in which case the owner would be estopped from asserting rights to the trademark.'" *Id.* at 596 (citation omitted). Courts find that a licensor maintains control when there is an express right to supervise a licensee's operations, when the licensor is "familiar with" the licensee's quality control, and when the licensor and licensee have a "close working relationship." *Barcamerica*, 289 F.3d at 596–97.

Plaintiff asserts the licensing agreement between ICC and MFIB was uncontrolled because there was no right to inspect or supervise, no actual control, and no close working relationship. (Doc. 30 at 11–14.) However, at the preliminary injunction hearing, Defendant Sands testified that he understood how MFIB was using the mark and approved of it. (Hearing Tr. at 119:6–24.) Defendant Sands also testified that he understood the quality of the work MFIB performed and generally approved of it. (*Id.*) Given this testimony and that Defendant Sands was a part-owner of MFIB, the licensee, Plaintiff is not likely to prove abandonment through uncontrolled licensing.

### *iii. Conclusion*

It is unlikely that Plaintiff will be able to show a protectable ownership interest in the ICON marks. Instead, it is likely that Defendant Sands established common law rights

---

[6] Indeed, it would be difficult for Plaintiff to show intent not to resume use in light of Section 3.01 of the Transition Services Agreement discussed above. (*See* Doc. 20-1 at 5; Ex. 101.)

9

to the ICON Builders mark through his companies' use of the name before the formation of MFIB. Indeed, prior ownership of the marks is evident in the licensing agreement between ICC and MFIB. Based on the facts presented in the briefing and at the preliminary injunction hearing, it is also unlikely that Plaintiff will show Defendant Sands abandoned the ICON Builders mark through cessation of use or through uncontrolled licensing. Therefore, Plaintiff has not established a clear likelihood of success of the merits with respect to the first element of a trademark infringement claim.

Because Plaintiff has not shown a likelihood of success on proving ownership of the marks, the Court will not address the second element of trademark infringement: whether Defendants' use of the mark is likely to cause consumer confusion. Therefore, Plaintiff is not likely to succeed on the merits of the trademark infringement claim, and the Court will continue to assess the remaining *Winter* factors.

### b. Irreparable Harm

"To show irreparable harm, '[a] plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.'" *Forefront Dermatology S.C. v. Crossman*, 642 F. Supp. 3d 947, 951 (D. Ariz. 2022) (alteration in original) (quoting *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). 15 U.S.C. § 1116(a) states that "[a] plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon . . . a finding of likelihood of success on the merits for a violation identified in [§ 1125] in the case of a motion for a preliminary injunction or temporary restraining order." "Evidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm," but "[t]hose seeking injunctive relief must proffer *evidence* sufficient to establish a *likelihood* of irreparable harm." *Herb Reed Enters., LLC*, 736 F.3d at 1250–51 (emphasis added) (holding that platitudes about goodwill and reputation, not grounded in evidence, are insufficient to establish a likelihood of irreparable injury in a trademark case).

Here, Plaintiff has not demonstrated likelihood of success on the merits, so there is

no presumption. Plaintiff argues that the confusion between ICON National and ICON Builders has resulted in a loss of "control over the quality of its services as perceived by consumers within the affordable housing industry." (Doc. 2 at 16.) Plaintiff also contends that the instances of confusion cost its employees time as they clarify misconceptions and remedy mistakes like misrouted payments. (*Id.*) At the preliminary injunction hearing, Mr. Krueger testified that the confusion is hurting MFIB's brand, value, and morale. (Hearing Tr. at 50:10–14.) Describing the confusion, Mr. Krueger explained that over three million dollars in payments had been sent to MFIB by mistake (Hearing Tr. at 48:23) and business partners have been confused about which company completed certain projects. (Hearing Tr. at 49:18–50:6.) Developers and investors have also reached out to Mr. Krueger expressing their dissatisfaction with projects they believed MFIB was working on, when the projects were actually being completed by IBCA. (Hearing Tr. at 15:19–22.) Although there may be evidence of confusion between the two companies, there is no evidence that Plaintiff has lost customers or contracts based on the confusion. Were that to occur, the value of a lost opportunity could be estimated based on the contract. Considering the evidence proffered, the Court finds that Plaintiff has failed to establish a likelihood of irreparable harm.

### c.  Balance of Equities and Hardships

Before issuing a preliminary injunction, "courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (citation omitted). When a plaintiff shows intentional infringement, the defendant "cannot complain of the harm that will befall it when properly forced to desist from its infringing activities." *Triad Sys. Corp. v. Se. Express Co.*, 64 F.3d 1330, 1338 (9th Cir. 1995), *superseded by statute on other grounds*, 17 U.S.C. § 117(c); *see also Am. Rena Int'l Corp. v. Sis-Joyce Int'l Co.*, 534 Fed. App'x 633, 636 (9th Cir. 2013) ("That the present injunction will allegedly drive [the defendant] out of business does not weigh in [the defendant's] favor where it appears that [defendant's] entire business model is premised on its infringing use of the [plaintiff's]

mark.").

Here, Plaintiff has not demonstrated that the balance of equities and the public interest weigh in its favor. Plaintiff argues that "MFIB has suffered and will continue to suffer a loss of goodwill and harm to its reputation if IBCA and Sands are permitted to continue offering their directly competing services under the ICON marks." (Doc. 2 at 16–17.) But given that Plaintiff has not shown it is likely to succeed in establishing a senior ownership interest in the marks, this argument is unavailing. In short, the Court is not convinced that Defendants have engaged in infringing conduct. And to force Defendants to rebrand their business, when the conduct may not be infringing, is a hardship that outweighs the ongoing confusion. Defendant Sands testified at the preliminary injunction hearing that the issuance of an injunction would destroy IBCA's business because he has active contracts backed by bonds, ongoing construction projects, employees, and employed subcontractors. (Hearing Tr. at 160:6–21.) Based on all this information, Plaintiff has not shown that the balance of equities weighs toward relief.

### d. Public Interest

"[T]he usual public interest concern in trademark cases [is] avoiding confusion to consumers." *Internet Specialties W., Inc. v. Milon-DiGiorgio Enters., Inc.*, 559 F.3d 985, 993 (9th Cir. 2009). Additionally, the public has an important interest in protecting trademarks. *See Brookfield*, 174 F.3d at 1066. Plaintiff has not satisfied its burden at this stage to show that it has a protectable ownership interest in the mark, and further development of the facts could show that Defendant Sands is the senior user. Also, though there appears to be confusion in the industry about the ownership and employees of each company, Plaintiff has not shown that this confusion has created a likelihood of any irreparable harm. The public interest favors whichever party is the true owner of the marks—which here, is likely Defendants.

### IV.     CONCLUSION

The resolution of this Motion largely turns on the central question of who owns the ICON marks, a question addressed under the first and most important *Winter* factor. Based

on the Transition Services Agreement executed during the formation of MFIB, and the other evidence before the Court, it is very likely that Defendant Sands is a senior user of the ICON marks and did not abandon his ownership rights to the marks at any point. Accordingly, Plaintiff has not demonstrated a likelihood of success nor serious questions going to the merits of the trademark infringement claim. Plaintiff has also failed to offer evidence showing a likelihood of irreparable harm, and the balance of equities and the public interest weigh against restraining Defendants from using the mark that Defendant Sands likely owns and has operated under for over forty years. Having considered all the evidence and the arguments of the parties, and having individually considered the *Winter* factors, the Court finds that Plaintiff is not entitled to a preliminary injunction.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 2) is **denied**.

Dated this 19th day of September, 2025.

Honorable Steven P. Logan
United States District Judge