**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MFIB LLC,<br><br>Plaintiff,<br>vs.<br><br>IBCA LLC, et al.,<br><br>Defendants. | No. CV-25-02517-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiff's renewed Motion for Preliminary Injunction (Doc. 108). The Court previously denied Plaintiff's first Motion for Preliminary Injunction, filed on July 17, 2025 (Doc. 2), finding that Plaintiff had not shown a likelihood of success on the merits, or the applicability of the other *Winter*[1] factors, to justify a preliminary injunction. (Doc. 49). Plaintiff filed an appeal on October 16, 2025, (Doc. 63) and on July 10, 2026, the Ninth Circuit affirmed this Court's ruling. (Doc. 100). The Ninth Circuit noted in its Memorandum that Plaintiff may, upon appropriate showing, be entitled to relief "preventing use of the ICON Marks by IBCA in areas other than those of prior use." (Doc. 100-1 at 5). Accordingly, the Court's analysis here is limited to whether Plaintiff has made such a showing to justify the instant request for a preliminary injunction. Plaintiff has not and, for the following reasons, the Court will deny Plaintiff's renewed Motion for

[1] *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7 (2008).

Preliminary Injunction.[2]

## I. BACKGROUND

The Court will briefly summarize the background facts before it, incorporating by reference the more extensive background detailed in the Court's prior Order denying Plaintiff's first preliminary injunction request. (*See* Doc. 49). Plaintiff, MFIB, LLC, doing business as MFRG-ICON Construction and ICON National ("Plaintiff" or "MFIB"), filed the instant action on July 17, 2025. (Doc. 1). Plaintiff seeks injunctive relief for a variety of claims relating to Defendants IBCA, LLC, doing business as ICON Builders ("ICBA" or "ICON Builders"), and Allen W. Sands' ("Sands," collectively "Defendants") alleged interference with Plaintiff's trademarked names, all involving the use of the term "ICON." (Docs. 1, 3). Plaintiff is a construction company that specializes in affordable housing construction, owned by Justin Krueger. (Doc. 1 at 3–5, ¶¶ 9–19). Defendant IBCA is also an affordable housing construction company and is owned by Defendant Sands. (*Id.* at 2, ¶ 4). Plaintiff MFIB was originally formed when Defendant Sands' and Mr. Krueger's construction companies merged. (*Id.* at 4, ¶ 12). Plaintiff now seeks to enjoin Defendants' use of the name of the name ICON Builders. (*Id.* at 6–10, ¶¶ 25–29).

Plaintiff holds several federal trademark registrations using the branding "ICON." (*See* Doc. 1 at 5–6, ¶ 19–22). In August 2022, Plaintiff MFIB started a brand, ICON National, and filed for two federal trademark registrations in that name under U.S. Trademark Reg. No. 7,228,222 and 7,230,751. (*Id.* at 5–6, ¶ 21–22). In 2023, Plaintiff MFIB obtained two additional federal trademark registrations using the "MFRG-ICON Construction" name: U.S. Trademark Reg. No. 7,228,247 and 7,228,248. (*Id.* at 5, ¶ 19). Defendant Sands formed a new company around 2023, IBCA, LLC ("IBCA" or "ICON Builders"), doing business as ICON Builders. (*Id.* at 6, ¶ 25). Plaintiff alleges that, since 2024, Defendants' use of "ICON" and "ICON Builders" has increasingly caused consumer

---

[2] Because it would not assist in resolution of the instant issues and the Court previously held an evidentiary hearing on Plaintiff's first request for injunctive relief (ME 40), the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

confusion within the affordable housing and construction industries. (*Id.* at 7, ¶ 28).

In its first Motion for Preliminary Injunction, Plaintiff asked the Court to enjoin Defendants from using the "ICON" or "ICON Builders" marks and from using any of the ICON-formative marks or other marks that would cause confusion, as well as from filing an application for registration of any of the ICON-formative marks. (Doc. 2-1 at 1–2). The Court held an evidentiary hearing on September 10, 2025, during which it heard testimony from Mr. Krueger and Defendant Sands, among others, and received dozens of exhibits into evidence. (ME 40). The Court found that Defendant Sands was considered the senior user of the ICON name, ICON Builders used the mark in commerce, and there was no abandonment of the use. (Doc. 49 at 6–8). As the Court concluded, Plaintiff failed to show a likelihood of success on proving ownership of the mark, and thus Plaintiff failed to show likelihood of success on the merits of its trademark infringement claim. (*Id.* at 10). The Court also found that Plaintiff failed to establish a likelihood of irreparable harm, and failed to show the balance of equities and public interest weighed in its favor. (*Id.* at 11–12).

Plaintiff filed an interlocutory appeal to the Ninth Circuit of the Court's Order (Doc. 63), and on June 5, 2026, the Ninth Circuit affirmed the Court's Order. (Doc. 100). The Ninth Circuit noted, in its Memorandum affirming the Court's Order, that "MFIB may be entitled, on an appropriate showing, to either preliminary or permanent injunctive relief preventing use of the ICON Marks by IBCA in areas other than those of prior use." (Doc. 100-1 at 5). In coming to such a conclusion, the Ninth Circuit upheld the Court's rejection of MFIB's broad requested relief, and noted MFIB's failure to limit the geographic scope of the preliminary injunction. (*Id.* at 4). ("[W]e cannot fault the district court for failing to enter a limited injunction given the procedural posture of this case. MFIB's motion for a preliminary injunction sought nationwide relief, mentioning the possibility of more limited geographic scope only in a footnote.").

Plaintiff filed the instant Motion on September 16, 2026, arguing "[t]his is the motion the Ninth Circuit said MFIB could bring." (Doc. 108 at 7). In it, Plaintiff asks the Court to issue a preliminary injunction barring Defendants from using the ICON name in

Texas, exempting Travis County where Defendant has three prior development sites. (*Id.* at 23–24). Plaintiff argues that "Defendants' prior use in Texas reaches, at most, three Austin deals and one property Sands owned, and the rest of Texas is MFIB's." (*Id.* at 23). Plaintiff also filed a Notice for Expedited Consideration, asking the Court to rule on the instant Motion "no later than November 1, 2026," due to an Affordable Housing Finance ("AHF") Live conference occurring November 16-18, 2026. (Doc. 109). Plaintiff argues that both Plaintiff and Defendant will attend the AHF conference, and that the conference is a "major venue" for affordable housing renovation opportunities "including Texas projects." (*Id.* at 2). Plaintiff asks that Defendants be enjoined from using ICON "to market or solicit Texas work, including Texas projects solicited at industry conferences occurring outside Texas." (*Id.* at 2–3).

Defendants filed a Response in Opposition to Plaintiff's Notice for Expedited Consideration[3] (Doc. 110) and a Response in Opposition to Plaintiff's Motion (Doc. 119). Defendants argue that Plaintiff requests a deadline that "does not match the relief it seeks" and identify that the November AHF trade show Plaintiff's seek review before is in Chicago, Illinois. (Doc. 110 at 2). Defendants assert "Plaintiff's request . . . depends on a geographic and logical disconnect: it invokes an Illinois trade show to accelerate adjudication of a Texas injunction." (*Id.* at 2). In Defendants' Response to the Motion, Defendants raise ten arguments to dispute Plaintiff's request for a preliminary injunction. (Doc. 119 at 2). As relevant to the Court's analysis here, Defendants argue that they have a national brand with national clients, and that the scope of the market cannot be easily confined to one state, such as Texas. (*Id.* at 7–8). Defendants further aver that, even if the Court were to only consider Defendants' prior use of the ICON brand in Texas, "MFIB's request fails because Sands has prior use of the ICON Builders mark in Texas, not just Travis County." (*Id.* at 10). Defendants documented several projects, beginning in 2017,

---

[3] Plaintiff filed a Reply arguing that Defendants were not permitted to file a Response to the Notice for Expedited Consideration, pursuant to the Local Rules and the Court's Case Management Order. (Doc. 112). The Court will nevertheless, in its discretion, consider both the Response filed by Defendants and the Reply filed by Plaintiff.

that Defendants were involved in throughout Texas using the ICON Builders branding and reputation. (*Id.* at 11–12).

By way of Reply, Plaintiff argues that Defendant Sands' contacts with Texas are insufficient to establish prior use. (Doc. 125). Plaintiff does not argue that Defendants have not engaged in Texas projects as ICON Builders, but rather argues that "the only recognition of Sands in Texas was as a co-developer and guarantor, not as a contractor under a mark." (*Id.* at 9). Plaintiff further asserts that what Sands' co-developer "on the three Austin deals," Bill Fisher, learned about Defendant, he learned through Sands' work in California, rather than Texas. (*Id.*).

## II. ANALYSIS

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (citation omitted). A party seeking injunctive relief under Rule 65 of the FRCP must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. "Likelihood of success on the merits is the most important *Winter* factor; if a movant fails to meet this threshold inquiry, the court need not consider the other factors in the absence of serious questions going to the merits." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (internal citations and quotation marks omitted).

### A. Prior Use

As documented above, this is Plaintiff's second attempt at a preliminary injunction. (*See* Doc. 2). Plaintiff raises many of the same arguments in his renewed Motion as compared to his initial request for a preliminary injunction. (*Compare* Doc. 2 *with* Doc. 108). The Court's focus is on the parties' arguments regarding Defendants' prior use in Texas. (*See* Doc. 100-1 at 5).

"To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the

first to actually use the mark in the sale of goods or services." *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996). While a registrant is granted the presumption of ownership, a non-registrant can rebut this presumption by showing that the registrant had not established valid ownership rights by using the mark in commerce first. *Id.* at 1219–1220; *see, e.g.*, *FN Herstal SA v. Clyde Armory Inc.*, 838 F.3d 1071, 1081 (11th Cir. 2016) (stating that, "in the absence of actual sales, advertising, publicity, and solicitation" may be sufficient to establish prior use of a mark). Trademark rights may arise without federal registration through "prior exclusive appropriation or adoption and use." *Pac. Supply Co-op. v. Farmers Union Cent. Exch. Inc.*, 318 F.2d 894, 905 (9th Cir. 1963). For both goods and services, the "'use in commerce' requirement includes: (1) an element of actual use, and (2) an element of display." *Soc. Techs. LLC v. Apple Inc.*, 4 F.4th 811, 817 (9th Cir. 2021) (citation omitted). As the Ninth Circuit has instructed, "[r]ights deriving from prior use are 'frozen' after federal registration to 'those areas where [the mark] then enjoyed recognition based on its reputation, advertising, and sales.'" (Doc. 100-1 at 4) (quoting *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 762 (9th Cir. 2006)).

Plaintiff argues that "the question is the geographic extent of Defendants' recognition as of August 4, 2022" and concludes "the answer is three Travis County project sites[.]" (Doc. 108 at 12–13). Such a simplistic boundary is unsupported by the record and by caselaw. Plaintiff concedes that Defendants have worked on housing construction projects using the "ICON" marks at least four times in Texas prior to Plaintiff filing for trademark registration. (*See* Doc. 108 at 14–16). Plaintiff argues that these instances do not "count" as "qualifying use" because "[t]he mark was never displayed on site, and every relationship ran to the same developer." (*Id.* at 15). However, Plaintiff fails to provide relevant support for its position arguing Defendants are somehow required to display their branding on the construction site or differentiate developers to show prior use. (*See id.*).

Defendants provide deposition testimony from James R. ("Bill") Fisher II, an affordable housing developer in Texas whom Sands worked with. (Doc. 119-6 at 3–20). Mr. Fisher testified about working with Defendant Sands on three distinct housing projects

in Texas. (*Id.* at 7). In the deposition, Mr. Fisher discussed how Defendant Sands was introduced to him as "ICON Builders." (*Id.* at 8–9). Mr. Fisher explained that he spoke with others in the community who "raved about ICON Builders and [Sands] and the work that they did." (*Id.*) Plaintiff seeks to diminish such testimony, arguing that such projects are "not market penetration by ICON Builders" and that "[w]hat Fisher learned about ICON Builders, he learned from California." (Doc. 108 at 15; Doc. 125 at 9). However, the existence of such projects in Texas is direct evidence to the contrary. Mr. Fisher, the owner of Sonoma Housing *based in Texas*, testified that he learned about and was recommended to work with ICON Builders based on Defendant Sands' reputation. (Doc. 119-6 at 16). Mr. Fisher, who estimates that approximately 80% of his housing developments occur in Texas, testified that Defendant Sands came "very highly recommended." (*Id.* at 9, 16). Mr. Fisher also testified that he also learned of Defendant Sands' work from his banker, who saw Defendant Sands at "the conference" and told Mr. Fisher of "ICON Builders['] . . . really substantial presence in the conference vendor area." (*Id.* at 8).

On the record before this Court, Defendants were sought out to perform at least three housing development projects in Texas based on their reputation and conference advertising. (Doc. 119-6 at 3–20). While Plaintiff attempts to limit such a scope, arguing that such projects were located only to the Austin area (*see* Doc. 108 at 15), such arguments are unpersuasive. Mr. Fisher's testimony shows that at least Mr. Fisher, a housing developer in Texas, and his banker were reputationally aware of ICON Builders' and Defendant Sands' work in the affordable housing space and as a result began housing development projects with Defendants in Texas. (Doc. 119-6 at 3–20). That the housing development projects happened to be located in one city does not inherently restrict Defendants' reputation to only that city in Texas. Plaintiff arguably concedes this point in his requested relief; Plaintiff seeks to restrict Defendants' ability to solicit additional work in Texas at a national affordable housing conference in *Chicago, Illinois*. (*See* Doc. 108).

Plaintiff further tries to undermine Defendants' presence in Texas by arguing that

"three Austin Area co-development deals and one self-owned Dallas renovation" should not equate to Defendants' prior use of the mark in Texas. (Doc. 108 at 16). However, the nature of multi-million-dollar housing projects inherently restricts the number and frequency by which developers can take on new projects. (*See* Doc. 119-6 at 16–17) (Mr. Fisher testifying that in the 15 years Sonoma has been in business, it has worked on total 15 to 16 projects in Texas); *see also Charles Jacquin Et Cie, Inc. v. Destileria Serralles, Inc.*, 921 F.2d 467, 473 (3d Cir. 1990) ("Whether a volume of sales is significant will vary with the product and the market. The numbers that result in injunctive relief in one case may not be significant in another.").

Accordingly, based on the record at this stage, Defendants have provided sufficient evidence to show that ICON Builders "enjoyed recognition based on its reputation" in Texas. *See Quiksilver, Inc.*, 466 F.3d at 762.

## III. CONCLUSION

The Ninth Circuit affirmed the Court's previous denial of Plaintiff's Motion for Preliminary Injunction, while noting that Plaintiff may be able to "on appropriate showing . . . prevent use of ICON Marks by [Defendants] in areas *other than those of prior use*." (Doc. 100-1 at 5) (emphasis added). In again requesting a preliminary injunction, Plaintiff is required to persuade the Court "by a clear showing" that such an "extraordinary and drastic remedy" should issue. *See Fraihat*, 16 F.4th at 635. Such a showing has not been made here. Plaintiff asks the Court to enjoin Defendants from using ICON marks in Texas, or, in the alternative, in all of Texas aside from Austin County. (Doc. 108 at 23). However, Defendants have provided sufficient evidence to show that ICON marks have been used by Defendants in Texas prior to Plaintiff's trademark registration and that Defendants have "enjoyed recognition based on its reputation" in Texas. *See Quiksilver, Inc.*, 466 F.3d at 762. Accordingly, Plaintiff's second Motion for Preliminary Injunction fails for the same reason as Plaintiff's first request. Plaintiff has not demonstrated a likelihood of success nor serious questions going to the merits of the trademark infringement claim to justify enjoining Defendants' use of ICON marks in Texas.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 108) is **denied**.

**IT IS FURTHER ORDERED** that, good cause appearing, Plaintiff's Motion to Exceed (Doc. 124) is **granted**. The Reply (Doc. 125) is accepted as filed.

Dated this 26th day of October, 2026.

Honorable Steven P. Logan
United States District Judge